## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | **Cr. No. 14-018 (KBJ)** |
| **V.** | ) | |
| | ) | |
| **MARSHA RICHARDSON** | ) | |

### MOTION TO SUPPRESS EVIDENCE
### AND MEMORANDUM IN SUPPORT THEREOF

Defendant Marsha Richardson, through counsel, respectfully moves the Court, to suppress, as evidence against her, a pistol and ammunition seized from her residence by law enforcement officers on January 24, 2014, as well as a statement given to the police that day. The motion is based upon *Franks v. Delaware,* 438 U.S. 154 (1978) and its progeny. The affidavit in support of the relevant search warrant contains both false statements and statements made with a reckless disregard for the truth.

I.    BACKGROUND

Ms. Richardson is charged with unlawful possession of a firearm and ammunition by a person previously convicted of a crime punishable by imprisonment exceeding a year.

On January 24, 2014 agents of the Federal Bureau of Investigation and officers of the Metropolitan Police Department executed a search warrant at 1628 28th Street, SE, Apt. 3. The search was related to violations of the narcotic laws; Ms. Richardson was not the target of the search. The target was her boyfriend, William Hill, who also resided at that address. During a search of the residence a firearm was recovered. Ms. Richardson provided an inculpatory statement with respect to the firearm. Ms. Richardson was arrested, charged, and indicted on the firearms possession charge.

II.     THE AFFIDAVIT

A.     Overview

The relevant affidavit[1] stems from the investigation of narcotics traffickers in Maryland and the District.  The purported leader of the organization was Juan Ramon Floyd.  Affidavit ¶ 5.  During the course of the investigation wiretaps, pursuant to court orders, were instituted on Mr. Floyd's cellphones.  At some point authorities overheard conversations between Mr. Floyd and Mr. Hill.  (Copies of the line sheets of these purported calls are being delivered separately to chambers with the consent of the government so as not to violate the protective order.)[2]  Analysis of the line sheets show dubious, reckless conclusions about purported drug dealing by Mr. Hill, incorrect assumptions made in bad faith about who was using what phones, and who the person was on the other end of the calls was.

B.     Analysis

Early on the authorities confuse William Hill with Person X, who may well have been a confederate of Mr. Floyd.  For example there are phone calls between Juan Floyd's number and another number on May 23, 2013.  The individual is first identified as an unknown male.  The unknown male calls Mr. Floyd back shortly after that evening and responds to Mr. Floyd calling him by a certain nickname.  Inexplicably, on a following phone call that evening between Mr. Floyd and Person X, the authorities conclude that the person is Mr. Hill.  There was nothing to indicate that the person was Mr. Hill; the authorities had no history with the voice, and no information that Mr. Hill

---

[1]Attached as Exhibit A.

[2]It is not the intention of counsel to inundate the Court with paper.  However the line sheets indicate the degree of speculation, lack of corroboration and mistakes attendant to including Mr. Hill as a drug partner of Mr. Floyd.

went by the nickname.  Indeed, the previous call to Mr. Hill to obtain the phone number of a local defense attorney was to a different phone number. The conclusion at that point that Mr. Hill was Person X  and that he was meeting Mr. Floyd for a drug transaction was uncorroborated, erroneous and reckless.[3]  The authorities continued to assume that the  phone number belonged to Mr. Hill, which it did not.

The authorities fall into a pattern of false and reckless assumptions.  On June 27, 2013, Mr. Floyd calls Mr. Hill at.  There is a desultory discussion about William Hill's prior charge, a discussion about a woman's assault charge, references to "Buster" and "Jug".  There is no discussion coded or uncoded, about drugs.  From this conversation and, again, with no corroboration, the authorities wrongly conclude  that Mr. Hill wanted to talk to Mr. Floyd "in person (possibly drug related."

A number of other conversations between Mr. Floyd and Mr. Hill's number are  monitored, but do not include coded or uncoded terms for drugs, as did the conversation with Person X  The conversations center more on meeting than anything else; from these conversations about meetings the agents wrongly, recklessly, and falsely affy that Mr. Hill is engaged in drug trafficking with Mr. Floyd.  Thus for example the authorities conclude the following on July 8, 2013:

> Wire interceptions revealed that HILL was a narcotics customer of Floyd.
>
> For example, on July 8, 2013, at approximately 1:56 p.m., in activation 11508, FLOYD called HILL.  HILL said, "I was trying to see you, right? Trying to holla at you.  But I got one other thing to do, right?  What about late

---

[3]An example: At one point (May 23, 2013), the authorities intercept a call from Juan Floyd to a number where the respondent says he is in the house.  The respondent says he is right by the Murry's on 5th and H Street, NE.  Mr. Floyd states that he will be there in 2 minutes.  The problem for the agents is that Mr. Hill lived with Ms. Richardson at 1626 28th Street, SE, a considerable distance from the Murry's at 5th and H Street, NE.

this evening?" FLOYD said, "yeah, that's cool."  HILL said, "About uh sis o'clock?"  FLOYD said, "Yeah, just hit me . . . call me."  HILL said, "Alright.  Look, I'm going to tell you where I live at, man, listen . . . I live on Twenty-Eighth Street, Southeast.  Sixteen-twenty-six."  FLOYD repeated the address back to HILL and said, "I got you."

Affidavit ¶16.

The agents then followed Mr. Floyd to Mr. Hill's residence, where they saw a black man seated in

the front passenger seat.  Not only could the authorities not identify the man as Mr. Hill, they were

not privy to any conversation and did not observe any kind of exchange.  Based on the foregoing,

the agent offers the equivocating, "Based on my training and experience in this investigation and

others, I *believe* (emphasis added) FLOYD met HILL for the purpose of completing a narcotics

transaction.

Affidavit ¶ 18.

Once again, having wrongly concluded from the earlier conversation between Mr. Floyd and

Person X that Person X was Mr. Hill, the authorities wrongly conclude that Mr. Hill was involved

in drug transactions.

The pattern continued.  On August 31, 2013, the authorities monitored phone calls in which

Mr. Floyd and Mr Hill agreed to meet one another.  The agent's conclusion: "While agents did not

surveil the meeting, *I believe* (emphasis added) that FLOYD and HILL met for the purpose of

conducting a narcotics transaction." Affidavit ¶ 19.

One remaining call suggests drugs to the police.  On one occasion in September, 2003, Mr.

Floyd tells Mr. Hill that he is Pentagon City.  Mr. Hill asks him to bring some groceries, potatoes

and hamburger buns. From this conversation, and with nothing else, the authorities conclude that the

Mr. Hill needs to meet Mr. Floyd for a narcotics purchase.

III.    <u>ARGUMENT</u>

Where a defendant makes a "substantial preliminary showing" that a false statement was knowingly, or with reckless disregard for the truth, included by the affiant in a warrant affidavit, and the statement is necessary to a finding of probable cause, that defendant is entitled to a hearing under the Fourth Amendment.  *Franks v. Delaware*, 438 U.S. 154, 155 (1978).  In *Franks*, the Court considered a matter in which it was alleged that a detective's misstatements in a warrant affidavit were made in bad faith.  After a lengthy discussion the Court held that where there allegations of deliberate falsehood or reckless disregard for the truth, with accompanying substantiation,[4] the petitioner is entitled to a hearing to determine whether resultant evidence should be suppressed.

Here the relevant affidavit is generally standard boilerplate, outlining drug traffickers' procedures, where instruments of the crimes may be secreted, the use of firearms, and other aspects of drug dealing.  When it come to specifics, however, with respect to Mr. Hill, the assertions are nothing more than "I believe" speculation, based upon shoddy investigation.[5]

In sum, the affying agent provided information in the affidavit which was incorrect as to who was using what phone, provided nothing more than speculation as to meeting about narcotics transactions, and misled the Magistrate about the state of the evidence.

Ms. Richardson requests a hearing on this motion.

---

[4]As an offer of proof, Mr. Hill is prepared to testify that he was not Person X, did not own the phone used in the conversations between Person X and Juan Floyd, and was not discussing drug trafficking with Mr. Floyd.

[5]The case against Mr. Hill was ultimately dismissed.

Respectfully submitted,


A. J. Kramer

Federal Public Defender


_____/s/_____
Shawn Moore
Assistant Federal Public Defender
Attorney for Marsha Richardson
Bar #214171
625 Indiana Avenue, NW
Washington, DC 20001
202/208-7500
Fax/208-7515